UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NORMAN PAGAN

                                        Plaintiff,

                v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                                        Defendant.
_____

**REPORT
and
RECOMMENDATION**

**14-CV-00788A(F)**

APPEARANCES:          LAW OFFICES OF CLARK JORDAN PEZZINO, PLLC
                      Attorneys for Plaintiff
                      JOSEPH D. CLARK, of Counsel
                      1207 Delaware Avenue, Suite 202
                      Buffalo, New York 14209

                      JAMES P. KENNEDY
                      ACTING UNITED STATES ATTORNEY
                      Attorney for Defendant
                      EMILY MAXINE FISHMAN
                      Assistant United States Attorney, of Counsel
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York 14202, and

                      STEPHEN P. CONTE
                      Regional Chief Counsel - Region II
                      United States Social Security Administration
                      Office of the General Counsel, of Counsel
                      26 Federal Plaza, Room 3904
                      New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on May 12, 2015.  The matter is presently before the court on a motion for judgment on the pleadings filed by Plaintiff on May 11, 2015 (Doc. No. 8), and a motion for judgment on the pleadings filed by Defendant on July 1, 2015.  (Doc. No. 10).

## BACKGROUND

Plaintiff  Norman Pagan ("Plaintiff") seeks review of Defendant's decision denying him Social Security Disability ("SSD") benefits under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act (together "disability benefits").  In denying Plaintiff's applications for disability benefits, Defendant determined that Plaintiff had severe impairments of opioid dependence, marijuana use, insulin dependent diabetes and depressive order (R. 13), but Plaintiff was not disabled at any time between Plaintiff's alleged onset disability date of November 7, 2008, through the date of the ALJ's disability determination on February October 31, 2012.  (R. 22).

## PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on May 1, 2009 (R. 190), that was initially denied by Defendant on July 28, 2009.  (R. 89).  Pursuant to Plaintiff's request on September 17, 2009 (R. 118-20), a hearing was held before Administrative Law Judge Robert Harvey ("Harvey") ("the ALJ") on February 23, 2011.  (R. 63-87). Plaintiff, represented by Joseph Clark. Esq., ("Clark") appeared and testified at the

hearing. The ALJ's decision denying the claim was rendered on March 14, 2011 (R. 90-105), and on May 5, 2011, Plaintiff requested review of the hearing decision by the Appeals Council. (R. 158). On June 14, 2012, the Appeals Council issued an Order ("AC Order"), and remanded the case to the ALJ for further consideration and hearing. (R. 107-08). On October 18, 2012, a hearing was held before ALJ Harvey in Buffalo, New York, where Plaintiff, represented by Clark appeared and testified. (R. 29-62). Vocational expert Jennifer Dizon ("Dizon") or ("VE Dizon") also appeared and testified. The ALJ's decision denying the claim was rendered on October 31, 2012 (R. 8-28), and on December 31, 2012 Plaintiff requested review by the Appeals Council. (R. 7). The ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on August 18, 2014. (R. 1-6). This action followed on September 17, 2014, with Plaintiff alleging that the ALJ erred by failing to consider him disabled as of November 7, 2008. (Doc. No. 1).

On May 11, 2015, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion") together with a memorandum of law (Doc. No. 8) (Plaintiff's Memorandum"). Defendant filed, on July 1, 2015, a motion for judgment on the pleadings ("Defendant's motion") together with a memorandum of law (Doc. No. 10) ("Defendant's Memorandum"). On July 22, 2015, Plaintiff filed a reply/response ("Plaintiff's Reply") to Defendant's motion for judgment on the pleadings (Doc. No. 11). Oral argument was deemed unnecessary.

Based on the following, Defendant's motion should be DENIED; Plaintiff's motion should be GRANTED as to his request for judgment on the pleadings, and alternatively, GRANTED as to his request for remand for further proceedings consistent with this

Report and Recommendation.

## **FACTS**[2]

Plaintiff was born on August 30, 1961, has four children, lives alone, and completed ninth grade in high school. (R. 64).

Relevant to the period of disability review in this case, on June 4, 2008, Thomas Ryan Ph.D., ("Dr. Ryan"), completed a psychiatric evaluation on Plaintiff on behalf of the Social Security Administration and diagnosed Plaintiff with Axis I[3] depressive disorder not otherwise specified ("NOS"), opiate abuse in remission, and Axis III diabetes, kidney and back problems and high blood pressure. (R. 297-98).

On September 5, 2008, C. Butensky, M.D. ("Dr. Butensky"), completed a mental residual functional capacity assessment on Plaintiff on behalf of the Social Security Administration, and evaluated Plaintiff with a moderate limitation to understanding and remembering instructions, carrying out detailed instructions, maintaining concentration and attention for extended periods, maintaining a regular schedule and an ordinary routine, working in coordination with others without being distracted, completing a normal workday without interruptions from psychologically based symptoms, interacting appropriately with the general public, accepting instructions and getting along with co-workers, responding to changes in the work setting, and setting realistic goals and making plans independently. (R. 306-08). N. Livingston ("CE Livingston"), a

---

[2] Taken from the pleadings and the administrative record.
[3] The DSM-IV multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information: Axis I, clinical disorders, Axis II; personality disorders, Axis III; general medical conditions, Axis IV; psychosocial and environmental stressors, and Axis V, global assessment of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-IV-TR* ("DSM-IV"), at 27 (4th ed. 2000).

consultative examiner with the Social Security Administration, completed a psychiatric review technique on Plaintiff the same day, and assessed Plaintiff with a moderate limitation to maintaining social functioning.  (R. 320).

On October 30, 2008, George Alexis Sirotenko, D.O. ("Dr. Sirotenko"), an osteopath, completed a consultative internal medical examination on Plaintiff and diagnosed Plaintiff with a history of poorly controlled diabetes, evidence of lower extremity neuropathy, decreased vibratory sense, probable bursitis (inflammation of fluid-filled bursa sac) of Plaintiff's left shoulder with mild limitations to Plaintiff's range of motion ("ROM"), low back pain, history of depression, asthma, and unclear lower extremity vascular etiology.  (R. 326-27).  Dr. Sirotenko opined that Plaintiff should avoid prolonged standing and walking stairs, inclines or ladders, and that Plaintiff would benefit from sedentary activities that afford Plaintiff the opportunity to elevate his legs. (R. 328).

On June 16, 2009, Cindrea Bender, M.D. ("Dr. Bender"), completed a consultative internal medical examination on Plaintiff, and evaluated Plaintiff with mild limitations for walking, standing, and climbing for prolonged periods of time, excessive bending, pushing, and lifting of heavy objects.  (R. 349-53).  Dr. Bender diagnosed Plaintiff with diabetes mellitus with associated peripheral neuropathy and diabetic retinopathy, low back pain, and high blood pressure.  (R. 352).

That same day, Renee Baskin, Ph.D., ("Dr. Baskin"), completed a consultative psychiatric examination on Plaintiff who reported no hospitalizations or outpatient treatment.  Dr. Baskin evaluated Plaintiff with mildly impaired attention and concentration, recent and remote memory as a result of nervousness in the evaluation,

and diagnosed Plaintiff with Axis I depressive disorder, NOS, opioid dependence/abuse reported in full remission with methadone maintenance, and Axis II status post treatment for gangrene of Plaintiff's gallbladder.  (R. 357).

On July 27, 2009, Psychologist M. Totin, ("Psychologist Totin"), completed a psychiatric review technique on Plaintiff and evaluated Plaintiff with moderate limitations to maintaining concentration, persistence and pace, and opined that Plaintiff's mental functioning would permit Plaintiff to engage in substantial gainful activity.  (R. 451).

On August 24, 2009, licensed clinical social worker Manuel Colon ("Mr. Colon"), a mental health counselor with Buffalo General Hospital Community Health Center ("Community Health"), in Buffalo, New York, completed an initial assessment on Plaintiff who was depressed, with a tearful affect and stated that he wanted to end his life.  (R. 571).  On August 26, 2009, Plaintiff was referred to Yogesh Bakhai, M.D. ("Dr. Bakhai"), who diagnosed Plaintiff with significant diabetes that was causing erectile dysfunction. (R. 569).

During a counseling session with Mr. Colon on August 31, 2009, Plaintiff exhibited a stable mood and denied suicidal thoughts.  (R. 568).  Mr. Colon recommended Plaintiff attend psychiatric counseling on a twice weekly basis.  (R. 368). Plaintiff returned for mental health counseling with Mr. Colon on September 3, 2009 (R. 567), with a similar mood.

On September 16, 2009, Plaintiff visited Jeffrey D. Kashin, M.D. ("Dr. Kashin"), a psychiatrist, for a follow-up evaluation where Dr. Kashin diagnosed Plaintiff with depression NOS and polysubstance abuse disorder.  (R. 562).

On September 17, 2009, Mr. Colon evaluated Plaintiff with stable mood and

affect, and noted that Plaintiff's mood was improved when speaking about Plaintiff's children.  (R. 561). Plaintiff reported feeling better taking his Trazadone (depression) medication, and exhibited improved mental health during a treatment session with Mr. Colon on September 28, 2009.  (R. 558).

On October 1, 2009, Plaintiff visited Mr. Colon and reported that Plaintiff had not filled his prescription from Dr. Kashin that week as Plaintiff wished to start taking his new prescription on weekends when not during the week while receiving his daily methadone treatment.  (R. 556).  On October 5, 2009, and October 8, 2009, Mr. Colon noted that Plaintiff remained generally stable and that Plaintiff's sleep had improved. (R. 554-55).

Plaintiff cancelled a counseling session with Mr. Colon on October 12, 2009 (R. 533), because Plaintiff believed the office was closed for observance of the Columbus Day holiday.  On October 7, 2009, Dr. Kashin noted that Plaintiff reported poor sleeping habits, but was responding well to his other medications.  (R. 552).

On October 22, 2009, Mr. Colon noted that Plaintiff exhibited a bright affect, insight, and improved judgment.  (R. 550).  During a therapy session with Mr. Colon on October 26, 2009, Plaintiff reported positive physical and emotional changes resulting from his talk therapy and medication.  (R. 549).  On October 29, 2009, Mr. Colon evaluated Plaintiff with intact memory, clear and coherent speech, improved judgment and insight and a bright mood.  (R. 546).  Plaintiff was late for a counseling session with Mr. Colon on November 5, 2009, as a result of his bus transportation.  (R. 538).  Plaintiff continued to show improvement during counseling sessions with Mr. Colon on November 9, 2009, and November 12, 2009 (R. 548, 544), but did not attend a

scheduled counseling session with Mr. Colon on November 16, 2009. (R. 543).

On November 23, 2009, Mr. Colon noted that Plaintiff was depressed and anxious, but reported success using his relapse-prevention skills. (R. 542). On November 30, 2009, Plaintiff reported increased depressive symptoms including tearfulness, sadness, isolation, loneliness, isolation and confusion, and reported that spending Thanksgiving alone was difficult. (R. 541). On December 7, 2009, Plaintiff reported being in the "doldrums," and that he was contemplating moving to Philadelphia to be closer to his daughter. (R. 540). Plaintiff did not attend a scheduled counseling session with Mr. Colon on December 10, 2009. (R. 539).

During a counseling session with Mr. Colon on December 14, 2009, Plaintiff exhibited stable mood and affect, with intact memory. (R. 539). On December 17, 2009, Plaintiff cancelled his counseling session with Mr. Colon as a result of inclement weather, and discussed reducing Plaintiff's counseling sessions to once weekly based on Plaintiff's current need. (R. 537).

Plaintiff did not attend a counseling session with Mr. Colon on December 21, 2009 (R. 526), for flu-like symptoms, and did not attend a regularly scheduled counseling session with Mr. Colon on December 28, 2009. (R. 535-36).

On January 4, 2010, Mr. Colon noted that Plaintiff reported staying at home to guard his jewelry after a neighborhood thief broke into Plaintiff's home. (R. 534).

On January 7, 2010, Mr. Colon noted that Plaintiff showed improved insight and judgment, but reported increased health issues with gastroesophageal reflux disease ("GERD"), and vomiting. (R. 533).

During a counseling session with Plaintiff on January 14, 2010, Mr. Colon

reviewed Plaintiff's positive toxicology test results for cannabis. (R. 531). A counseling session with Mr. Colon on January 18, 2010, showed Plaintiff with improved mood and sleep habits. (R. 530). Plaintiff was late for a counseling session with Mr. Colon on January 25, 2010. (R. 528).

Plaintiff cancelled counseling sessions with Mr. Colon on January 11, 2010 (R. 532), and January 28, 2010 (R. 527), as a result of transportation issues, and cancelled counseling sessions with Mr. Colon on January 21, 2010 (R. 529) and July 9, 2010 (R. 499), because of coinciding medical appointments.

On February 1, 2010, Mr. Colon noted that Plaintiff reported symptomatic relief from depression. (R. 526). Plaintiff was late for a counseling session with Mr. Colon on February 8, 2010 (R. 525), and exhibited improved depressive symptoms on February 11, 2010. (R. 524).

On February 17, 2010, Dr. Kashin noted that Plaintiff was doing well overall (R. 523), and noted that Plaintiff exhibited a stable mood and affect on February 18, 2010 (R. 520), March 4, 2010 (R. 521), and March 8, 2010. (R. 522).

On March 15, 2010, Mr. Colon noted that Plaintiff was depressed with underlying anxiety. (R. 519). On March 18, 2010, Mr. Colon noted that Plaintiff was depressed with underlying anxiety and that Plaintiff reported relationship problems from his erectile dysfunction and using marijuana to relax. (R. 518). On March 25, 2010, Mr. Colon noted that Plaintiff exhibited slightly improved mood and affect with residual symptoms of depression and underlying anxiety. (R. 517). On April 1, 2010, Mr. Colon noted that Plaintiff was depressed and tearful (R. 516), and on April 8, 2010, noted that Plaintiff's mood was depressed with anxiety, and that Plaintiff reported that his medication was

not working. (R. 515). On April 13, 2010, Mr. Colon noted that Plaintiff's mood was angry as a result of a noisy neighbor. (R. 514). During a counseling session with Mr. Colon on April 15, 2010, Plaintiff reported medicating his depression with marijuana. (R. 513). On April 22, 2010, Mr. Colon noted that Plaintiff reported being diagnosed with Hepatitis C, and reported using marijuana, and an increase in depressive symptoms that include insomnia, crying spells, lethargy, and lack of energy, (R. 512), and not taking his medication over the past few weeks when his depressive symptoms had increased (R. 512-19), but reported feeling better since resuming his medication regimen. (R. 511). Plaintiff's mood and affect were stable on April 29, 2010 (R. 510), and May 4, 2010 (R. 509), but Plaintiff exhibited situational depression during a session with Mr. Colon on May 21, 2010 (R. 508), eased by engaging in mindfulness and breathing exercises. (R. 508). On May 26, 2010, Dr. Kashin noted that Plaintiff was stable. (R. 507).

Treatment sessions with Mr. Colon on May 27, 2010 (R. 506), June 3, 2010 (R. 505), June 15, 2010 (R. 506), June 18, 2010 (R. 503), June 25, 2010 (R. 502), July 1, 2010 (R. 501), July 6, 2010 (R. 500), July 13, 2010 (R. 498), July 15, 2010 (R. 497), July 22, 2010 (R. 495), and July 29, 2010 (R. 493), showed Plaintiff with stable mood and affect and improved depressive symptoms. Plaintiff did not attend a scheduled counseling session with Mr. Colon on July 20, 2010. (R. 496).

Plaintiff reported that he was using marijuana again during treatment sessions with Mr. Colon on July 22, 1010, and August 5, 2010 (R. 493, 495), and reported increased anxiety and using marijuana on August 17, 2010. (R. 492).

On August 26, 2010 (R. 488), Plaintiff cancelled his counseling session with Mr.

Colon as a result of illness. On August 31, 2010 (R. 487), and October 5, 2010 (R. 479), Plaintiff cancelled counseling sessions with Mr. Colon as Plaintiff did not have money for bus fare and had not received his bus card in the mail.

Plaintiff did not attend scheduled counseling sessions with Mr. Colon on September 14, 2010 (R. 484), September 23, 2010 (R. 481), October 12, 2010 (R. 476), October 14, 2010 (R. 475), and December 9, 2010 (R. 590).

On October 21, 2010, Mr. Colon noted that Plaintiff's mood was depressed as a result of conflict in a relationship with his girlfriend, but Plaintiff reported taking his medications as prescribed. (R. 474). Plaintiff did not attend a scheduled counseling session with Mr. Colon on October 26, 2010. (R. 549).

On October 28, 2010, Mr. Colon evaluated Plaintiff with stable mood and affect. (R. 473). A counseling session with Mr. Colon on November 4, 2010, showed Plaintiff with stable mood and affect, and Mr. Colon noted that Plaintiff agreed to stop using cannabis. (R. 472). A November 29, 2010 counseling session with Mr. Colon showed Plaintiff angry that Mr. Colon was late for the session, and that Plaintiff's medication was providing relief from Plaintiff's depression. (R. 471).

On December 20, 2010, Mr. Colon noted that Plaintiff reported increased depression as a result of problems with his girlfriend and a tenant. (R. 594).

A counseling session with Mr. Colon on December 30, 2010, showed Plaintiff taking his medication with no psychiatric symptoms. (R. 592).

On January 28, 2011, Dr. Kashin completed a mental residual functional capacity assessment on Plaintiff, and evaluated Plaintiff with no useful ability to function in remembering work-like instructions, maintaining regular attendance and being punctual

within customarily strict tolerances, working in coordination with or in proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without requiring an unreasonable number and length of rest periods, or getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (R. 598). Dr. Kashin assessed Plaintiff with a seriously limited ability to carrying out detailed instructions and dealing with stress of semi-skilled and skilled work, interacting appropriately with others, traveling in unfamiliar places, and using public transportation, and opined that Plaintiff's mental impairment would cause Plaintiff to miss more than four days of work each month, and that Plaintiff was unable to engage in full-time employment on a competitive basis. (R. 599-60).

On February 4, 2011, February 11, 2011, February 14, 2011, February 21, 2011, and March 7, 2011, Mr. Colon evaluated Plaintiff with a stable mood and affect and noted that Plaintiff reported taking his medication as prescribed. (R. 682-87).

During the administrative hearing on February 23, 2011, Plaintiff testified that he attempted suicide on two occasions, most recently by stabbing himself in the neck with a knife. (R. 83-84). Plaintiff further testified that he thinks about killing himself every day (R. 86), and doesn't like to be around other people, at which time Plaintiff began to cry uncontrollably and required the ALJ temporarily stop the hearing to allow Plaintiff an opportunity to compose himself. (R. 85).

On March 21, 2011, Mr. Colon noted that Plaintiff was angry as a result of the financial stress of no longer dealing drugs. (R. 679). Plaintiff reported being angry and depressed on March 28, 2011, after receiving a letter that Plaintiff's disability application

was denied.  (R. 677).

Plaintiff did not attend scheduled treatment sessions with Mr. Colon on April 4, 2011 (R .676), April 7, 2011 (R. 675), April 21, 2011 (R. 673), May 5, 2011 (illness) (R. 669), June 2, 2011 (R. 554), July 28, 2011 (R. 659), August 22, 2011 (R. 655), and August 25, 2011 (R. 654).

On August 29, 2011, Mr. Colon evaluated Plaintiff with self-deprecating speech, low self-esteem, depression, and mood swings that kept Plaintiff from leaving home. Plaintiff reported financial hardship and frustration that although he desired to return to work as a mechanic, he was unable to bend or lift or do anything for prolonged periods of time.  (R. 652).  Plaintiff did not attend a scheduled counseling session with Mr. Colon on September 8, 2011.  (R. 653).

On September 9, 2011, Mr. Colon evaluated Plaintiff with stable mood and affect and noted that Plaintiff was attending a methadone clinic with a friend.  (R. 651).

On September 15, 2011, Mr. Colon noted that Plaintiff reported stabilized depression when using his prescribed medication.  (R. 651).  Plaintiff did not attend scheduled counseling sessions with Mr. Colon on September 22, 2011 (R. 649), and October 13, 2011.  (R. 647).

On September 23, 2011, Mr. Colon noted that Plaintiff reported that Plaintiff was taking his medication as prescribed, but reported using cannabis within the previous two weeks.  (R. 648).

On October 28, 2011 (R. 645), November 4, 2011(R. 644), and January 6, 2012 (R. 636), Mr. Colon noted that Plaintiff appeared anxious and depressed.

On October 28, 2011, Mr. Colon discussed attendance issues with Plaintiff and

noted that Plaintiff was angry that he was unable to locate a physician to help him change from methadone to suboxone treatment for Plaintiff's opiate addiction. Mr. Colon noted that Plaintiff was depressed and anxious, very self-deprecating and down on himself. (R. 645).

On November 4, 2011, Mr. Colon noted that Plaintiff was anxious and depressed and experiencing difficulty with changing his health insurance. (R. 644),

On November 11, 2011, Mr. Colon noted that Plaintiff had received a referral to begin suboxone for treatment of Plaintiff's heroin addiction, and that Plaintiff reported not having used cannabis during the previous week. (R. 643).

On November 18, 2011, Plaintiff visited Mr. Colon for a referral to suboxone for treatment of Plaintiff's opiate addiction. Mr. Colon evaluated Plaintiff's mood and affect as stable, and noted that Plaintiff reported taking his medication as prescribed and had not used cannabis during the previous week. (R. 641).

On December 9, 2011, a visit to Mr. Colon showed Plaintiff irritable and anxious and feeling ill. (R. 639). Plaintiff cancelled a counseling session with Mr. Colon on December 2, 2011, for weather related reasons. (R. 640).

During a counseling session with Mr. Colon on December 20, 2011, Plaintiff reported being ill from his suboxone medication with dizziness, irritability and underlying anxiety. Mr. Colon noted that although Plaintiff had reported not using cannabis, Plaintiff's seven most recent toxicology screenings showed positive results for the drug. (R. 638).

Plaintiff did not attend a scheduled counseling session with Mr. Colon on February 17, 2012 (R. 634), and on February 28, 2012, Mr. Colon discontinued

Plaintiff's mental health counselling for lack of contact.  (R. 632).

On May 4, 2012, Plaintiff returned to Mr. Colon for counseling, and reported dizziness as a result of using compression socks.  Mr. Colon evaluated Plaintiff with irritable mood and anxious affect.  (R. 629).  On May 18, 2012, Plaintiff did not attend a regularly scheduled counseling session with Mr. Colon because he was ill.  (R. 628).

On May 25, 2012, Mr. Colon evaluated Plaintiff with depressed mood and underlying anxiety and noted that Plaintiff reported lower extremity pain, and that the endocrinology clinic Plaintiff was attending had moved too far away for Plaintiff to be able to attend on a regular basis.  (R. 625).  Dr. Kashin provided medication management services to Plaintiff on June 22, 2012.  (R. 624).

On March 2, 2012, Plaintiff sought treatment from the Buffalo General Hospital emergency room, where Braden Beau, M.D. ("Dr. Beau"), completed a physical examination on Plaintiff, [4] who reported nausea, vomiting and weakness for three weeks that resulted in weight loss of 25 pounds.  (R. 620).

During Plaintiff's administrative hearing on October 12, 2012, Plaintiff testified that Plaintiff was attending therapy only once each week because Plaintiff's insurance carrier refused to cover Plaintiff's twice weekly counseling sessions.  (R. 43).  Plaintiff testified that he locks himself inside of his house on a daily basis, because Plaintiff is afraid that he will kill somebody if he goes outside, "do something to anybody that is looking at him, and would go crazy."  (R. 45).  Plaintiff further testified that he stays inside of his home every day, and only leaves his house to attend his medical appointments.  (R. 45-46).

---

[4] The record includes only three of six pages of Dr. Beau's treatment notes.

## **DISCUSSION**

**1.      Disability Determination under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security

Act if the individual is unable

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can
> be expected to last for a continuous period of not less than
> 12 months. . . .  An individual shall be determined to be
> under a disability only if his physical or mental impairment or
> impairments are of such severity that he is not only unable to
> do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform any past

relevant work, the burden shifts to the Commissioner to prove there is alternative

employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d

225, 231 (2d Cir. 1980).

**A.      Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding

disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law

judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S.

389, 401 (1971). Substantial evidence requires enough evidence that a reasonable

person would "accept as adequate to support a conclusion." *Pollard v. Halter,* 377 F.3d

183, 188 (2d Cir. 2004) citing *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.

v. NLRB*, 305 U.S. 197, 229 (1938)).

While evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d)*; Scherler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas*, 712 F. 2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period of which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.*

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[6] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry v. Schweiker, supra*, at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [his]

---

[6] The applicant must also meet the duration requirement which mandates that the impairment must last or be expected to last for at least a 12-month period. 20 C.F.R. §§ 404.1509 and 416.909.

past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. *Id.* The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry, supra*, at 467. In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision. *Richardson v. Perales*, 402 U.S. 389, 410 (1971).

**B.** **Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. § 404.1572(a).  Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574.  In this case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 7, 2008, the date of Plaintiff's alleged onset of disability.  (R. 13).  Plaintiff does not contest this determination.

**C.** **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination of whether the disability claimant had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509, and significantly limits the claimant's ability to do "basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking,

standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, capacities for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff had the severe impairments defined under 20 C.F.R. § 404.1520(c) and 404.920(c), of opioid dependence in methadone treatment, marijuana abuse, insulin dependent diabetes mellitus, and depressive disorder, and that Plaintiff had the non-severe impairments of left shoulder pain, hypertension, and asthma. (R.13-14). Plaintiff does not contest this finding.

**D.**     <u>**Listing of Impairments, Appendix 1**</u>

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"). If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled. 20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled"). In this case, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments. (R. 14-15). Plaintiff does not contest this finding.

**Residual Functional Capacity**

Once an ALJ finds that a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, or retains the residual functional capacity to perform the claimant's past work, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id*. An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294.

Plaintiff contends that the ALJ's residual functional capacity assessment that Plaintiff was able to perform light work is without support of substantial evidence. In particular, Plaintiff contends that the ALJ's residual functional capacity assessment is

erroneous, as the ALJ, in finding that Plaintiff's depressive order was severe, included no "meaningful" limitations in the ALJ's residual functional capacity assessment of Plaintiff that resulted from Plaintiff's depression, including Dr. Ryan's opinion that Plaintiff had a moderate limitation in dealing with others, and Dr. Baskin's opinion that Plaintiff would be limited to simple directions and instructions, and limited in his ability to performing simple tasks independently. Plaintiff's Memorandum at 13. Plaintiff further alleges that the ALJ violated the treating physician rule by not affording proper weight to the opinion of Dr. Kashin, Plaintiff's treating psychiatrist. *Id.* Defendant maintains that the ALJ's residual functional capacity assessment includes limitations related to Plaintiff's depressive disorder, including a limitation to Plaintiff's ability to dealing with stress, Defendant's Memorandum at 25, and that no violation of the treating physician rule occurred as the ALJ was not required to accept Dr. Ryan's opinion proffered before Plaintiff's onset date of disability. Defendant's Memorandum at 26. Defendant further maintains that substantial evidence does not support Dr. Kashin's opinion regarding Plaintiff's functional limitations. Defendant's Memorandum at 27-28.

An ALJ's Step Four findings need only apply proper legal standards, and be supported by enough evidence such that additional analysis would be unnecessary. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2013) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). In this case however, the ALJ's residual functional capacity assessment of Plaintiff is not supported by substantial evidence.

Plaintiff's alleged date of disability onset is November 7, 2008. (R. 11). Dr. Ryan's psychiatric evaluation of Plaintiff, wherein Dr. Ryan opined that Plaintiff had a moderate limitation in Plaintiff's ability to deal with others and stress, was completed on

June 4, 2008. (R. 295). "While evidence of [a claimant's] condition prior to the [alleged disability] onset date . . . is to be considered by the ALJ in furtherance of evaluating whether the [claimant] qualifies for benefits, the period between onset of disability and expiration of insured status is the focus of the inquiry," s*ee Ward v. Shalala,* 898 F. Supp. 261, 263 (D. Del. 1995), and the ALJ is entitled to weigh all of the evidence available to make residual functional capacity findings that are consistent with the record as a whole. *See Matta v. Astrue,* 508 Fed. App'x. 53, 56 (2d Cir. 2013). No error therefore results from the ALJ's decision not to include Dr. Ryan's opinion proffered before Plaintiff's onset date in the ALJ's residual functional capacity assessment of Plaintiff. Plaintiff's motion on this issue is without merit.

Plaintiff's contention that the ALJ erred by not including Dr. Baskin's opinion that Plaintiff would be limited to simple instructions and directions and in performing simple tasks independently, Plaintiff's Memorandum at 13, is also without merit. On June 16, 2009, Dr. Baskin completed a medical source statement and opined

> [w]ith regard to the vocational capacities of the [Plaintiff]. He would have *minimal to no limitations* being able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks with supervision, make appropriate decisions and relate adequately with others.

(R. 357) (emphasis added).

As such, Plaintiff's denoting Dr. Baskin's opinion as limiting Plaintiff to simple directions and instructions and performing simple tasks independently is a mischaracterization of the evidence in the record and is therefore without merit.

Plaintiff next contends that the ALJ violated the treating physician rule by affording little weight to the opinion of Dr. Kashin, Plaintiff's treating psychiatrist.

Plaintiff's Memorandum at 14-15. Defendant maintains that the ALJ properly assigned little weight to Dr. Kashin's opinion, as Dr. Kashin's opinion was not supported by substantial evidence in the record, was inconsistent with the findings of Mr. Colon, Plaintiff's mental health counselor who provided treatment to Plaintiff under the supervision of Dr. Kashin, and the findings of Drs. Ryan, Baskin, and Totin, and Plaintiff's reported activities of daily living. Defendant's Memorandum at 28.

The treating physician rule generally requires deference to the opinion of a claimant's treating physician, yet affords controlling weight to those opinions only where such opinions are consistent with other substantial evidence in the record. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). In this case, Dr. Kashin's opinion that Plaintiff had no useful ability to function in areas of remembering work-like instructions, maintaining regular attendance and being punctual within customary work tolerances, working in coordination with or in proximity to others without being unduly distracted, completing a normal workday and work week without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, or getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes (R. 598), that Plaintiff had seriously limitations to carrying out detailed instructions, dealing with the stress of semi-skilled and skilled work, interacting appropriately with others, traveling in unfamiliar places, and using public transportation, and would likely miss more than four days of work each month and was unable to engage in full-time employment on a competitive basis (R. 599-60), is supported by substantial evidence in the record.

Specifically, on September 16, 2009, Dr. Kashin evaluated Plaintiff with

depression and poly-substance abuse (R. 562), and with poor sleeping habits on October 7, 2009. (R. 552). Although Dr. Kashin evaluated Plaintiff as doing well overall on February 17, 2010 (R. 523), and with stable mood and affect on February 18, 2010 (R. 520), March 4, 2010 (R. 521), March 8, 2010) (R. 522), and May 26, 2010 (R. 507), and Mr. Colon evaluated Plaintiff with stable mood and affect on May 27, 2010 (R. 506), June 3, 2010 (R. 505), and June 15, 2010 (R. 506), June 18, 2010 (R. 503), June 25, 2010 (R. 502), July 1, 2010 (R. 501), July 6, 2010 (R. 500), July 13, 2010 (R. 498), July 15, 2010 (R. 497), July 22, 2010 (R. 495), July 29, 2010 (R. 493), Plaintiff did not attend a regularly scheduled counseling session with Mr. Colon on July 20, 2010 (R. 496), and his condition significantly deteriorated after that time.

Notably, Plaintiff reported using marijuana during treatment sessions with Mr. Colon on July 22, 2010, and August 5, 2010 (R. 493, 495), and reported feeling more anxious and using marijuana on August 17, 2010. (R. 492). On August 26, 2010, Plaintiff cancelled a counseling session with Mr. Colon as a result of illness (R. 488), and on August 31, 2010 (R. 487), and October 5, 2010 (R. 479), Plaintiff cancelled counseling sessions with Mr. Colon as Plaintiff did not have money for bus fare or receive his bus card in the mail.

Plaintiff did not attend scheduled counseling sessions with Mr. Colon on September 14, 2010 (R. 484), September 23, 2010 (R. 481), October 12, 2010 (R. 476), and October 14, 2010 (R. 475). On October 21, 2010, Mr. Colon noted that Plaintiff's mood was depressed as a result of conflict with a relationship with his girlfriend (R. 474), and Plaintiff did not attend scheduled counseling sessions with Mr. Colon on October 26, 2010 (R. 549), and December 9, 2010. (R. 590). On December 20, 2010,

Mr. Colon noted that Plaintiff reported increased depression related to problems with his girlfriend and tenant. (R. 594).

On January 28, 2011, Dr. Kashin completed a mental residual functional capacity assessment on Plaintiff, and evaluated Plaintiff with no useful ability to function in aptitudes needed to do unskilled work that include remembering work-like instructions, maintaining regular attendance and being punctual within customary usually strict tolerances, working in coordination with or in proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, or getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (R. 598). Dr. Kashin further assessed Plaintiff with seriously limited ability to carrying out detailed instructions, dealing with stress of semi-skilled and skilled work, interacting appropriately with others, traveling in unfamiliar places, and using public transportation, and opined that Plaintiff would likely miss more than four days of work each month and was unable to engage in full-time employment on a competitive basis. (R. 599-60).

During Plaintiff's administrative hearing on February 23, 2011, Plaintiff testified that he had tried to kill himself twice, most recently by stabbing himself in the neck with a knife (R. 83-84), and that he thinks about killing himself every day and doesn't like to be around other people. (R. 86). While testifying to his suicide attempts, Plaintiff began to cry uncontrollably and the ALJ discontinued the hearing to allow Plaintiff time to compose himself. (R. 85).

On March 21, 2011, Mr. Colon noted that Plaintiff was angry as a result of

financial stressors from not profiting from dealing drugs (R. 679), and on March 28, 2011, Plaintiff reported being angry and depressed.  (R. 677).

Plaintiff  did not attend scheduled treatment sessions with Mr. Colon on April 4, 2011 (R .676), April 7, 2011 (R. 675), April 21, 2011 (R. 673), May 5, 2011 (illness) (R. 669), June 2, 2011 (R. 554), July 28, 2011 (R. 659), August 22, 2011 (R. 655), and August 25, 2011 (R. 654).

On August 29, 2011, Mr. Colon evaluated Plaintiff with self-deprecating speech, low self-esteem, depression, and mood swings that kept Plaintiff from leaving home, during which time Plaintiff reported financial hardship and that he wanted to return to work as a mechanic, but was unable to bend or lift or do anything for prolonged periods of time.  (R. 652).  Plaintiff failed to attend a scheduled counseling session with Mr. Colon on September 8, 2011.  (R. 653).

During Plaintiff's administrative hearing on October 18, 2012, Plaintiff reported that his mental health counseling was reduced from bi-weekly to weekly as a result Plaintiff's insurance (R. 43), and testified that he "lock[s] [him]self [into his house] because I don't want to go outside because I can kill somebody . . . [and] I can do something to anybody that is looking at me and, you know, go wild. I go crazy."  (R. 45). When questioned by ALJ Harvey how often Plaintiff stays in the house as a result of his mental health symptoms (R. 45), Plaintiff testified that he stays in the house every day and only leaves his house to attend medical appointments and mental health counseling.  (R. 46).

As discussed, Discussion, *supra,* at 24, Plaintiff's mental health symptoms appeared stabilized during the five-month period between February 17, 2010 (R. 523),

and July 20, 2010 (R. 496), yet significantly deteriorated for the period between August 5, 2010 (R. 493,) and October 18, 2012 (R. 45), the date of Plaintiff's administrative hearing. Substantial evidence thus supports Dr. Kashin's opinion that Plaintiff had severe limitations to Plaintiff's ability to function during the two-year period between August 5, 2010 and October 18, 2012, and that Plaintiff was unable to work on a full-time sustained basis. Significantly, Defendant points to no evidence in the record to support a contrary finding.

The ALJ's decision to assign less weight to Dr. Kashin's findings on Plaintiff's limited ability to function and inability to work is therefore not supported by substantial evidence in the record and requires remand. In this case, remand for calculation of benefits is warranted because further administrative proceedings or a new hearing would serve no useful purpose. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) (where no useful purpose would be served by remand for further development of record, remand for calculation of benefits is appropriate); *Martinez v. Commissioner of Social Security*, 262 F.Supp.2d 40, 49 (W.D.N.Y. 2003) ("Where the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for calculation of benefits is appropriate.").

However, should the district judge disagree with the foregoing recommendation for remand for calculation of benefits, the case should be remanded for further consideration, to afford the ALJ the opportunity to include the limitations set forth in Dr. Kashin's mental residual functional capacity questionnaire on Plaintiff in the ALJ's residual functional capacity assessment. Plaintiff's motion on this issue should therefore be GRANTED.

<u>Non-compliance with treatment</u>

Although not raised by Plaintiff, the court exercises judicial discretion (Fed. R. Civ. P. 15(a)), and proceeds to evaluate Defendant's contention that Plaintiff's depression improved when Plaintiff adhered to his prescribed treatment. Defendant's Memorandum at 23, 28. Plaintiff, by reply, maintains that in discussing Plaintiff's non-compliance with treatment, the ALJ failed to comply with Social Security Ruling 82-59 ("SSR 82-59"), which requires the ALJ to notify the Plaintiff of the negative outcome of Plaintiff's non-compliance with treatment, afford the Plaintiff the opportunity to provide reasons for non-compliance, and include a ruling on whether the Plaintiff's proffered reasons for non-compliance are justifiable. Plaintiff's Reply Memorandum at 6-8.

In order to receive benefits, disability claimants are required to follow prescribed treatment protocols, or provide acceptable reasons for not adhering to their prescribed treatment regimens. *See* 20 C.F.R. § 416.930. Social Security Ruling 82-59 provides that a claimant's benefits may be denied in instances where the Secretary finds that the claimant unjustifiably failed to follow prescribed treatment and, had the claimant followed the prescribed treatment regimen, the claimant would not be deemed disabled. *See Grubb v. Apfel*, 2003 WL 23009266, at *4 (Dec. 22, 2003, S.D.N.Y.). SSR 82-59 is typically applied only after a finding of disability has been made, *Grubb,* 2003 WL 23009266, at *5, and requires ALJs to follow a series of procedural safeguards before a finding of non-compliance is made:

1. The claimant . . . should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment.
2. The record must reflect as clearly and accurately as possible the claimant's or beneficiary's reason(s) for failing to follow the prescribed treatment.

3. Individuals should be asked to describe whether they understand the nature of the treatment and the probable course of the medical condition (prognosis) with and without treatment.

SSR 82-59, Titles II and XVI: Failure to Follow Prescribed Treatment. 1982 WL 31384 (1982).

In instances where an ALJ does not provide a claimant with the opportunity to address the issue of the claimant's non-compliance, either by hearing or follow-up inquiry, the ALJ loses the ability to assert the claimant's non-compliance as a reason for denying benefits. *Grubb*, 2003 WL 23009266, at *5.

In this case, the issue of non-compliance remained in the constant subtext of the ALJ's decision and during the Plaintiff's administrative hearing held on October 18, 2012, wherein the ALJ inquired whether the Plaintiff had attended all of his regularly scheduled sessions with Dr. Kashin for the previous year (R. 46), to which the Plaintiff testified that he had not missed any of his counseling sessions (R. 46), testimony that is contrary to substantial evidence in the record as Mr. Colon terminated Plaintiff from treatment on February 28, 2012, for missing 45 days of treatment. (R. 632). On this record, however, it is not entirely clear whether the ALJ expressly denied Plaintiff's claim on the basis of Plaintiff's non-compliance. While the ALJ refers to Plaintiff's non-compliance with Plaintiff's prescribed treatment regimen several times within the ALJ's findings ("claimant had not sought mental health treatment," "failed to appear for therapy sessions," "the claimant had been non-compliant with therapy") (R. 17)), ("claimant continued to report improvement in his mental health symptoms when he was compliant with treatment," "significant improvement when the claimant is compliant with treatment," "claimant was terminated from treatment due to non-compliance," "[a]n adverse inference is taken and conclude [sic] if he were compliant with treatment his

30

symptoms would improve," (R. 18)), such references do not clarify whether the ALJ expressly denied Plaintiff's disability claim on the grounds that Plaintiff failed to follow his prescribed treatment, or that the ALJ found the Plaintiff not-disabled for another reason.

When an ALJ fails to expressly deny benefits on the ground that the claimant failed to follow prescribed treatment, reviewing courts infer that the ALJ based the ALJ's disability finding on the claimant's lack of compliance, and require the ALJ to follow the safeguards set forth under SSR 82-59. *Grubb*, 2003 WL 23009266, at *6. When an ALJ uses non-compliance with treatment as an *express or implied basis* for denial of benefits, the requirements under SSR 82-59 must be met. *See Belen v. Astrue,* 2011 WL 2748687, at *13 (July 12, 2011 S.D.N.Y.) (emphasis added).

As no evidence in the record indicates that the ALJ provided Plaintiff with proper notice of the effect that Plaintiff's non-compliance with treatment would have on the outcome of Plaintiff's claim, or sought answers to explain why Plaintiff failed to attend his treatment sessions nine times between October 26, 2009, and December 9, 2010 (R. 549, 542, 539, 497, 484, 481, 476, 475, 590),[7] the ALJ's denial of Plaintiff's disability claim violates the requirements under SSR 82-59. Significantly, an ALJ's failure to expressly deny a claimant benefits on the grounds that the claimant failed to follow prescribed treatment results in an inference that the ALJ's finding on disability was based on the claimant's non-compliance. *Grubb,* 2003 WL 23009266, at *6-7 (inference

---

[7] As discussed in the foregoing, Background, *supra* at 4-13, Plaintiff missed ten scheduled counseling sessions with Mr. Colon for reasons that include transportation issues (R. 479, 532, 537, 538), coinciding medical appointments (R. 499, 529), illness (R. 488, 526, 628), inclement weather (R. 537), and a belief that Mr. Colon's office was closed for holiday observances. (R. 553). Plaintiff missed nine scheduled sessions with Mr. Colon without providing any reasons (R. 475, 476, 481, 484, 497, 539, 542, 549, 590), and was late for counseling sessions on four occasions (R. 471, 525, 528, 538).

of non-compliance is made where non-compliance remains in the subtext of the ALJ's findings, and/or the ALJ makes no express findings on the issue).  Moreover, a claimant's mental impairment can be the cause of non-compliance with treatment. *See Pate-Fires v. Astrue,* 564 F.3d 935, 945 (8th Cir. 2009) (citing, *inter alia, Mendez v. Chater,* 943 F.Supp. 503, 308 (E.D. Pa. 1996), *Brasheras v. Apfel,* 73 F.Supp.2d 648, 650-52 (W.D. La. 1990)).

Furthermore, SSR 82-59 places the duty of inquiry on the Social Security Administration in instances where non-compliance is the basis for a denial of benefits, and provides in pertinent part:

> The issue of failure to follow prescribed treatment should be resolved as quickly as possible. However, in a case where the issue of "failure" arises or remains unresolved 12 months after onset, an allowance is in order.  The issue of "failure" and if it is justifiable will continue to be developed.  If the issue of "failure" arises at the hearing or the AC levels, if not fully developed through testimony and/or evidence submitted, and it has been 12 months after onset, a favorable decision will be issued, and the case will be remanded for development of failure to follow prescribed treatment.

SSR 82-59.

Here, ALJ Harvey did not raise the issue of Plaintiff's failure to follow prescribed treatment during Plaintiff's February 23, 2011, administrative hearing (R. 61-87), the Appeals Council did not raise the issue of non-compliance in the AC Order (R. 107-08), and ALJ Harvey did not address Plaintiff's non-compliance  during Plaintiff's October 18, 2012, administrative hearing.  (R. 29-60).  A period of greater than 12 months has passed since the onset date of Plaintiff's disability on November 7, 2008, with neither the ALJ nor the Appeals Council raising the issue of non-compliance.  In accordance with SSR 82-59, remand should be required to afford the ALJ the opportunity to develop the issue of Plaintiff's non-compliance with treatment.  S*ee Grubb,* 2003 WL 23009266,

at *5 (S.D.N.Y. Dec. 23, 2003).

Should the district judge disagree with the initial recommendation for remand for calculation of benefits, remand for further consideration should be required on the issue of Plaintiff's non-compliance with treatment, to afford the ALJ the opportunity to provide a ruling on Plaintiff's non-compliance in accordance with the requirements set forth under SSR 82-59. In the interest of completeness, the undersigned continues to review the remaining steps in the disability review process.

**E.  Plaintiff's ability to perform past relevant work**

In determining whether a claimant's impairment(s) prevent the claimant from performing past relevant work, ALJs are required to  review the claimant's residual functional capacity and physical and mental demands of the claimant's past work.  *See* 20 C.F.R. § 404.1520(e).  Specifically, the Commissioner must demonstrate the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities."  *Id*.  An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.  *Decker*, 647 F.2d at 294*.*

In this case, the ALJ determined that Plaintiff was not able to perform his past relevant work as a grinder as that position required the performance of work excluded by Plaintiff's residual functional capacity.  (R. 51).  Plaintiff does not contest this issue.

Should the district judge disagree with the foregoing recommendation for remand for calculation of benefits, and find that remand for further proceedings is appropriate, upon remand, the ALJ should include the ALJ's revised residual functional capacity assessment based on Dr. Kashin's mental residual functional capacity assessment of

33

Plaintiff (R. 598), in determining whether Plaintiff is able to perform Plaintiff's past relevant work.

**F.  <u>Suitable Alternative Employment in the National Economy</u>**

The Second Circuit requires that "all complaints . . . must be considered together in determining . . . work capacity."  *DeLeon v. Secretary of Health and Human Services,* 734 F.2d 930, 937 (2d Cir. 1984).  Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment , 20 C.F.R. § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform past work, 20 C.F.R. § § 404.1520(a)(4)(iv), and to prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training.  *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

It is improper to determine a claimant's residual work capacity based solely upon an evaluation of the severity of the claimant's individual complaints. G*old v. Secretary of Health and Human Services*, 463 F.2d 38, 42 (2d Cir. 1972).  To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they permit certain basic work activities essential for other employment opportunities.  *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and

"exertional capabilities."  *Id*. at 294.

An individual's exertional capability refers to the performance of "sedentary,"
"light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294.  In addition,
the Commissioner must establish that the claimant's skills are transferrable to the new
employment if the claimant was employed in a "semi-skilled" or "skilled" job.[8]  *Id*. at 294.
This element is particularly important in determining the second prong of the test,
whether suitable employment exists in the national economy.  *Id*. at 296.  Where
applicable, the Medical Vocational Guidelines of Appendix 2 of Subpart P of the
Regulations ("the Grids") may be used to meet the Secretary's burden of proof
concerning the availability of alternative employment and supersede the requirement of
vocational expert testimony regarding specific jobs a claimant may be able to perform in
the regional or national economy.  *Heckler  v. Campbell*, 461 U.S. 458, 462 (1983).

In instances where nonexertional limitations diminish a claimant's ability to
perform the full range of "light" work, the ALJ should require the Secretary to solicit
testimony from a vocational expert regarding the availability of jobs in the national and

---

[8] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled".
*Decker,* 647 F.2d at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be
learned on the job in a short period of time.  The job may or may not require considerable
strength....primary work duties are handling, feeding and off bearing (that is, placing or removing
materials from machines which are automatic or operated by others), or machine tending, and a person
can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are
needed.  A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the
more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching
machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding
equipment, property, materials, or persons against loss, damage or injury; or other types of activities
which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be
classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be
moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

regional economies suitable for employment of an individual with exertional and nonexertional limitations similar in nature to the claimant's. *Bapp v. Bowen*, 802 F.2d 606, 501 (2d Cir. 1986). Following a vocational expert's testimony, a plaintiff must be afforded an opportunity to rebut the expert's evidence. *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989).

The Act requires the ALJ utilize the same residual functional capacity assessment used to determine if a claimant can perform past relevant work when assessing a claimant's ability to perform other work. 20 C.F.R. § 404.1560(c)(2). "Hypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.'" *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (citing *Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275, 1279 (9th Cir. 1987)).

As discussed in the foregoing, Discussion, *supra*, at 21-28, should the district judge disagree with the undersigned's recommendation for remand for calculation of benefits, remand for further consideration is necessary to afford the ALJ the opportunity to conduct a new hearing that includes the ALJ's revised residual functional capacity assessment based on Dr. Kashin's residual functional capacity assessment of Plaintiff (R. 598), including testimony by a VE based on hypothetical questions posed by the ALJ to the VE, to establish whether Plaintiff is able to perform work available in the regional and national economies.

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 10) seeking judgment on the pleadings should be GRANTED in part and DENIED in part.  Defendant's motion (Doc.

No. 13) should be DENIED. The case should be REMANDED for calculation of benefits

or alternatively, REMANDED for further proceedings in accordance with this Report and

Recommendation,

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:     May 25, 2017
           Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     May 25, 2017
               Buffalo, New York